832 A.2d 1042

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Joseph BAVUSA, Appellant.**

Supreme Court of Pennsylvania.

Re–Submitted Oct. 29, 2002.

Decided Sept. 29, 2003.

Ellen T. Greenlee, Peter Rosalsky, Philadelphia, for Joseph Bavusa.

Hugh J. Burns, Philadelphia, for Commonwealth of PA.

Before CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN AND LAMB, JJ.

## OPINION OF THE COURT

Justice CASTILLE.

In 1997, the Pennsylvania General Assembly amended Section 6106 of the Uniform Firearms Act (codified in the Crimes Code at 18 Pa.C.S. §§ 6101–6126), which had previously graded as a felony of the third degree the act of carrying a firearm without a license. The amendment provided for grading of that same conduct as a misdemeanor of the first degree in certain circumstances—specifically, in circumstances where the person was "otherwise eligible" for licensure and the person had not "committed any other criminal violation." *Id.* § 6106(a). The issue here is whether the General Assembly intended that amendment to create (1) an additional, negative element of the existing felony offense of carrying a firearm without a license (the new element being license ineligibility or other criminal violations); (2) an affirmative defense to a felony grading; or (3) sentencing factors affecting the grading of the offense. Since the plain language of the statute does not explicitly answer the question before this Court,[1] our task is one of statutory construction.[2] For the reasons set forth

1. *Contrast* 42 Pa.C.S. § 9712(b) (statute explicitly notes "[p]rovisions of this section [setting forth mandatory minimum sentences for offenses committed with firearms] shall not be an element of the crime").

2. *See O'Rourke v. Commonwealth,* 566 Pa. 161, 778 A.2d 1194, 1201 (2001) (where statute does not state which meaning is intended, it is ambiguous on that point and statutory interpretation is warranted); *In re Kritz' Estate,* 387 Pa. 223, 127 A.2d 720, 723 (1956) ("[R]ules of statutory construction are to be resorted to only when there is [patent

below, we hold that the amendatory factors providing for the lesser grading of a Section 6106 offense as a misdemeanor—license eligibility and non-commission of other criminal violations—were intended to be sentencing factors, not a new element of the felony offense and not an affirmative defense. In addition, since we agree with the Superior Court that the trial court properly graded appellant's conviction as a felony, we affirm the order below.

At 7:00 p.m. on October 18, 1997, two Philadelphia police officers observed appellant, Joseph Bavusa, directing cars into a parking lot. As appellant reached up to point towards the lot, one officer saw a black handgun in a belt holster, partially concealed under appellant's jacket. Upon investigation, appellant told the officers that he was licensed to carry the handgun, but a police radio check proved that assertion to be false. Police seized from appellant a .32 caliber Walther semi-automatic handgun, which was loaded with six live rounds in the magazine and one round in the chamber. Appellant was arrested and subsequently charged with violating Sections 6106 and 6108 of the Uniform Firearms Act.

Section 6106 prohibits the carrying of a concealed firearm without a license (subject to enumerated exceptions, *see* 18 Pa.C.S. § 6106(b)), as follows:

(a) Offense defined.—

(1) *Except as provided in paragraph (2),* ... any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

(2) A person who is *otherwise eligible to possess a valid license under this chapter* but ... carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license *and has not committed any other*

or latent] ambiguity;" construction rules "are not to be used to create doubt but only to remove it").

*criminal violation* commits a misdemeanor of the first degree.

18 Pa.C.S. § 6106(a) (emphases added).[3] Section 6108 proscribes carrying a firearm in public in a city of the first class (*i.e.,* Philadelphia):

> No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:
>
> (1) such person is licensed to carry a firearm; or
>
> (2) such person is exempt from licensing under section 6106 of this title. . . .

*Id.* § 6108.

Appellant waived his right to a jury trial and proceeded to a bench trial before the Honorable Barbara A. Joseph. After the Commonwealth presented its case-in-chief, the trial court asked whether the Commonwealth would be presenting evidence regarding appellant's eligibility to carry a firearm. The Commonwealth argued that license ineligibility and commission of other criminal violations are sentencing factors, consideration of which is properly deferred pending a verdict. The Commonwealth rested and appellant presented his defense, which consisted of admitting that he carried the handgun without a license, but denying that it was concealed. Appellant did not contest his criminal liability under Section 6108, which lacks a concealment element, nor does he presently challenge that conviction. Appellant further argued that license ineligibility or commission of another criminal violation were factors establishing an additional material element of a Section 6106(a)(1) felony offense, which the Commonwealth was required to establish beyond a reasonable doubt. Appellant averred that the Commonwealth had failed to prove either disqualifying factor.

The trial court found appellant guilty of both offenses. The trial court then turned to the proper grading of the Section 6106 offense, asking the Commonwealth if it had any evidence

---

**3.** The ellipses indicate deletion of clauses relating to carrying firearms in a vehicle, clauses which are not relevant here.

on grading the offense. The Commonwealth, consistently with its position that license ineligibility and commission of other criminal violations are sentencing factors, invoked Section 6109 of the Uniform Firearms Act, 18 Pa.C.S. § 6109, the section governing firearms license eligibility. The Commonwealth argued that appellant was ineligible for a license under Section 6109(e)(1)(viii), which generally forbids the issuance of a license to carry firearms to a person charged with, or who has been convicted of, a crime punishable by imprisonment for a term greater than one year. In support of its argument, the Commonwealth produced a criminal abstract reflecting appellant's 1974 conviction for driving without lights to avoid identification, see 75 Pa.C.S. § 3734, and his 1975 probation without verdict under Section 17 of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–117. The trial court found that appellant was firearms license ineligible. The trial court then graded the Section 6106 offense as a third-degree felony and sentenced appellant to concurrent terms of two years' probation for the Section 6106 offense and the Section 6108 offense.

Appellant filed a post-sentence motion challenging the felony gradation of his Section 6106 conviction. The trial court denied relief. In an amended opinion, the trial court suggested that appellant had the burden of establishing license eligibility and an unblemished criminal record in order to reduce the presumptive felony grading of the Section 6106(a) conviction to a misdemeanor, and that he had failed to carry that burden.

Appellant renewed his Section 6106(a) grading claim on appeal to the Superior Court, which affirmed the judgment of sentence. *Commonwealth v. Bavusa*, 750 A.2d 855 (Pa.Super.2000). The panel began its analysis of the issue with a lengthy block quotation from this Court's decision in *Commonwealth v. Lopez*, 523 Pa. 126, 565 A.2d 437 (1989). In *Lopez*, this Court construed the predecessor to Section 6106— in particular, the clause (which has been carried over verbatim into the present version of the statute) prohibiting the unlicensed carrying of a concealed firearm by any person "except

in his place of abode or fixed place of business." The question in *Lopez* was whether the place of abode/fixed place of business territorial restriction was an element of the Section 6106 offense, or an affirmative defense to be proved by Lopez (as the *Lopez* trial court had held). The *Lopez* Court noted that the Crimes Code itself defines an "element of an offense" as follows:

Such conduct or such attendant circumstances or such a result of conduct as:

(1) is included in the description of the forbidden conduct in the definition of the offense; . . .

18 Pa.C.S. § 103, *quoted in Lopez*, 565 A.2d at 439. In concluding that the territorial restriction was an element of the Section 6106 offense, the *Lopez* Court explained that "[t]his clause is clearly an integral part of the forbidden conduct found in the definition of the offense." 565 A.2d at 439.

The *Bavusa* panel's lengthy quotation from *Lopez* also encompassed the *Lopez* Court's distinction of this Court's earlier decision in *Commonwealth v. Bigelow*, 484 Pa. 476, 399 A.2d 392 (1979).[4] The relevant question in *Bigelow* was whether the Commonwealth had the burden of proving non-licensure to sustain a conviction under Section 6108, the firearms provision specifically governing Philadelphia. The *Bigelow* Court held that proof of non-licensure was not an element of a Section 6108 offense, but instead licensure status could form the basis for an affirmative defense. 399 A.2d at 395–96. In distinguishing *Bigelow*, the *Lopez* Court noted that *Bigelow* had emphasized that:

In section 6108 . . . the material regarding licensure is set off by the word of exception "unless", indicating it is in the nature of a proviso. . . . The purpose of a proviso is to "qualify, restrain or otherwise modify the general language of the enabling provision."

. . . .

4. *Lopez* addressed *Bigelow* because *Bigelow* had formed the basis for the lower courts' holding that the territorial restriction in Section 6106 was not an element of the offense.

> Material placed in a proviso is not an element of the crime but rather a matter of defense and need not be either plead[ed] or proved by the prosecution.

*Lopez,* 565 A.2d at 440, *quoting Bigelow,* 399 A.2d at 395 (citations omitted). The *Lopez* Court then explained that Section 6106 was not structured in the same way as Section 6108. Far from being a proviso, the *Lopez* Court found that the territorial restriction in Section 6106(a) "is clearly a part of the definition of the offense:" it was not set-off and intended to modify the core definition, as was the case under Section 6108 and *Bigelow.* 565 A.2d at 440.[5]

After reproducing this analysis from *Lopez,* the Superior Court panel analyzed whether the statutory language at issue here is more like the core definitional language at issue in *Lopez,* or more like the proviso language at issue in *Bigelow,* ultimately concluding that the language is in the nature of a proviso. In so holding, the Superior Court panel noted that the single clause alteration to subsection 6106(a)(1), which merely refers to the new misdemeanor grading in subsection (a)(2) (*i.e.,* "Except as provided in paragraph (2)"), is separated from the actual substantive definition of the Section 6106 felony offense. The panel also noted that the factors delineated in subsection (a)(2) (license eligibility and non-commission of other criminal violations), which would permit a misdemeanor grading, are not "self-contained." This is so because one must turn to other provisions of the Uniform Firearms Act—provisions not even mentioned in subsection (a)(2)—to determine eligibility for a firearms license. In the panel's view, this construct requiring reference to other, unidentified statutory provisions to determine license eligibility distinguished *Lopez* and revealed that the General Assembly did not intend the

---

5. *Bigelow* itself had distinguished this Court's earlier decision in *Commonwealth v. McNeil,* 461 Pa. 709, 337 A.2d 840 (1975), which held that proof of non-licensure *was* an element of the offense under the predecessor to Section 6106. Thus, under this Court's precedent, the question of licensure is treated differently under Sections 6106 and 6108. *Bigelow* distinguished *McNeil* as being based upon "the peculiar wording" of the statute at issue there, wording which has been carried over into the present-day Section 6106 definition. 399 A.2d at 394.

misdemeanor factors in subsection (a)(2) to alter the elements of the felony offense. *Bavusa*, 750 A.2d at 858–62.[6]

**6.** The panel's fuller reasoning was as follows:

> At bar, unlike in *Lopez* but similar to *Bigelow*, the language "except as provided" is separated from the verbiage defining the offense. For example, missing from the paragraph containing "carrying a firearm without a license" is the added prohibitive conduct (e.g., making one "otherwise [in]eligible to possess a valid license" is not expounded upon) as discussed in *Lopez* and missing in *Bigelow* informing a person of the proscribed behavior. We have to travel to[, *inter alia,*] Section 6109 to garner what makes an accused "otherwise [in]eligible to possess a valid license". Section 6106(a) does not contain the defined conduct as existed in the predecessor to Section 6106 (and addressed in *Lopez*). Rather, one is directed to go outside the statute to ascertain what conduct exempts one from a felony status. This undermines the statute's "except" clause as an element of the offense, i.e., it manifests itself as a proviso required to be proven by a defendant as an affirmative defense to rebut the Commonwealth's allegation of guilt.
> * * * *
> Stated otherwise, the "except" clause is devoid of any language which facilitates a clear and accurate picture defining the offense. .... The referential language ("except as provided in paragraph (2)") in the statute convinces us that it was not meant by the Legislature to be an element of the offense. Rather, it is a directional finder to plot the perimeters of the "except" clause, which excuses one from being labeled a felon when charged under Section 6106. This is evident from the fact that the "except" paragraph lends nothing to the definition of the offense.
> * * * *
> Exemption from being labeled a felon requires one to read other sections of the subchapter, i.e., Sections 6105 and 6109, to vindicate one from the taint of felonious behavior and the recriminations flowing as a result of such a status. These definitional and grammatical limitations did not plague the statutes reviewed by *Lopez* and *Banellis* [*Commonwealth v. Banellis*, 452 Pa.Super. 478, 682 A.2d 383 (1996)], both of which concluded that the "except" phrase constituted an element of the offense to be proven by the prosecution. Here, in contrast, the formulation and content of the statute's use of the "except" term without elaboration but mere referral to another provision leaves the reader with no option but to scour the remaining provisions of the firearms subchapter to discount the "except" clause as an element of the offense not to be proven beyond a reasonable doubt by the prosecution. Further, it is a tool looked to at sentencing to grade the offense a felony or misdemeanor, as was the case at bar by the trial court.

750 A.2d at 858–59, 861–62 (footnotes and citation omitted). It is apparent from this analysis that, although the *Bavusa* panel clearly concluded that the 1997 amendment did not add additional elements to the felony offense, the court was not as clear on the question of whether

The Superior Court then determined that the trial court did not err in grading appellant's Section 6106 offense as a felony. First, the panel concluded that appellant's probation without verdict for a prior drug offense rendered him ineligible for a firearms license under Section 6109(e)(1)(viii). *Bavusa,* 750 A.2d at 862. The panel also held that appellant's contemporaneous conviction under Section 6108 in this case qualified as a conviction of "any other criminal violation" under Section 6106(a)(2), thus independently foreclosing misdemeanor grading. *Id.*

Appellant argues that, in amending Section 6106, the General Assembly added a material element (license ineligibility or commission of another criminal violation) to a Section 6106(a)(1) felony offense, which the Commonwealth was bound (and failed) to prove beyond a reasonable doubt. Although appellant concedes that the determination of license eligibility requires reference to other provisions of the Uniform Firearms Act, he argues that such incorporation by reference should be regarded as a space-saving device and not as an indicator of substantive legislative intent, emphasizing that the Crimes Code often employs the incorporation technique in establishing the elements of other offenses. *See, e.g.,* 18 Pa.C.S. § 2710 (ethnic intimidation). Further, appellant cites the U.S. Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which was decided after the statutory amendment at issue here, and argues that the amendment survives constitutional scrutiny under *Apprendi* only if it is construed as injecting a new element into the felony offense.

In the alternative, appellant suggests that license ineligibility and commission of another criminal offense are sentencing factors that enhance the grade of the offense from misdemeanor to felony, and that the Commonwealth must (but again failed to) prove the existence of at least one of these disqualifying factors by a preponderance of the evidence before the offense may be graded as a felony. Appellant argues that the

the amendment established an affirmative defense or sentencing factors.

courts below erred to the extent that they concluded that his successfully completed probation without verdict, or his contemporaneous conviction under Section 6108, required grading the offense *sub judice* as a felony. Finally, appellant asserts that employing his contemporaneous Section 6108 offense as the "other criminal violation" to support a felony grading offends equal protection and due process principles because it creates a geographical disparity in the treatment of firearms violators within Philadelphia city limits.

The Commonwealth responds that the bulk of appellant's arguments—which concern the burden (Commonwealth or defendant) and timing (trial or sentencing) of proof as to license eligibility and other criminal violations—need not be reached because, in point of fact, the Commonwealth proved at trial beyond a reasonable doubt that appellant "committed any other criminal violation" when it secured his separate conviction under Section 6108. That conviction alone, the Commonwealth argues, eliminated the prospect of misdemeanor grading of the Section 6106 offense.

In the alternative, the Commonwealth argues that the 1997 amendment to Section 6106 establishes mitigating sentencing factors, not a new element of the felony offense, and that it bore and satisfied the burden of proving the inapplicability of those factors by a preponderance of the evidence.[7] The Commonwealth adds the qualification, however, that the defendant should bear a threshold burden of establishing some proper purpose for carrying a firearm before the Commonwealth is put to its proofs. *See* 18 Pa.C.S. § 6109(c) (specifying that reason for obtaining firearms license must be set forth in license application). The Commonwealth answers appellant's claim that the 1997 amendment establishes a new element of the Section 6106(a)(1) felony offense by emphasizing that the conduct proscribed by Section 6106(a)(1)—the unlicensed carrying of a concealed weapon outside of home or work—is fully described in subsection (a)(1) independently of

---

7. At the post-sentence stage, the Commonwealth contended that license eligibility constitutes an affirmative defense. It does not pursue that argument on appeal.

the introductory "except clause" added in 1997. The Commonwealth further argues that the structure and wording of the 1997 amendment does not portray a new and separate offense with discrete elements, but rather depicts a grading provision lessening the severity of punishment for the *existing* offense for the benefit of certain offenders with certain personal characteristics and backgrounds that arguably make their conduct less serious, while not affecting the core conduct of carrying a firearm without a license. Since the amendment affects only the grading of the unchanged core offense, and does not provide for acquittal of the underlying conduct, the Commonwealth argues that the amendment should be construed as a grading provision affecting sentencing.

The Commonwealth also notes that, in construing the 1997 amendment, this Court must consider certain fundamental principles of statutory construction, including that the General Assembly is presumed not to have intended an absurd or unreasonable result; that good sense and practical utility must always be considered when construing a statute; and that a statute should receive the most sensible construction possible. Brief for Appellee, 9, *citing Commonwealth v. Coleman,* 289 Pa.Super. 221, 433 A.2d 36, 39 (1981). The Commonwealth argues that an elements construction of the 1997 amendment would be absurd since it would require the Commonwealth to *disprove* the subsection (a)(2) misdemeanor in order to prove the subsection (a)(1) felony, in a circumstance where the core elements (concealed firearm, no license, territorial restriction) are identical. The Commonwealth also argues that an elements construction is absurd from the standpoint of the accused since it would require introduction of prejudicial information, such as the defendant's prior convictions and bad reputation, in the Commonwealth's case-in-chief. Finally, the Commonwealth argues that appellant's constitutional arguments are both waived, since they were not raised in the trial court, and are meritless.

 The question for review involves the proper construction of a statute, which is a question of law. Hence, our review is plenary. *See C.B. ex rel. R.R.M. v. Commonwealth,*

*Dept. of Public Welfare,* 567 Pa. 141, 786 A.2d 176, 180 (2001). The Statutory Construction Act directs that, "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). *See P.R. v. Commonwealth, Dept. of Public Welfare,* 569 Pa. 123, 801 A.2d 478, 482 (2002). The Act further provides that where, as here, "the words of the statute are not explicit" on the point at issue, "the intention of the General Assembly may be ascertained by considering, among other matters:"

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c). *See P.R., supra.* As the Commonwealth has noted, the Act also requires that we presume that the General Assembly did not intend a result that is absurd or unreasonable. 1 Pa.C.S. § 1922(1) (fundamental presumption in "ascertaining the intention of the General Assembly in the enactment of a statute" is that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable"); *Housing Auth. of Chester v. Civil Service Comm.,* 556 Pa. 621, 730 A.2d 935, 947 (1999) ("The first principle of statutory construction is that courts will not interpret legislative enactments in a manner which imputes absurdity to the legislative enactment."); *Bigelow,* 399 A.2d at 394 (similar). *Accord Bowser v. Blom,* 569 Pa. 609, 807 A.2d 830, 835 (2002). Finally, we note that, " '[w]here a statute is fairly susceptible of two different constructions the court may properly consider the injustice, unreasonableness and inconvenience that would follow one of the constructions contended

for.' " *Sculley v. City of Philadelphia,* 381 Pa. 1, 112 A.2d 321, 325 (1955), *quoting with approval Duddy v. Conshohocken Printing Co.,* 163 Pa.Super. 150, 60 A.2d 394, 396 (1948).

Preliminarily, we will address the role and reviewability of appellant's constitutional arguments. We agree with the Commonwealth that any constitutional claims as such are waived for failure to raise them below. *See* Pa.R.A.P. 302. But appellant argues that, since the question raised here requires statutory construction, his invocation of constitutional concerns is proper. Specifically, appellant cites the settled canon of statutory construction teaching that "when a statute is reasonably susceptible of two constructions, by one of which the statute would be unconstitutional and by the other of which it would be constitutional, a court should adopt the construction that would make the statute constitutional." Brief for Appellant, 23 n. 9 (citation omitted). Appellant thus submits that his "constitutional" arguments are properly forwarded because he does not raise them as distinct claims for relief, but rather forwards them in arguing statutory construction.

The principle of construction appellant invokes has been codified in Section 1922 of the Act, which provides as follows:

§ 1922. *Presumptions in Ascertaining Legislative Intent*

In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:

\* \* \*

(3) That the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth.

1 Pa.C.S. § 1922. The Supreme Court of the United States has described this principle as "the canon of constitutional avoidance." *Harris v. United States,* 536 U.S. 545, 555, 122 S.Ct. 2406, 2413, 153 L.Ed.2d 524 (2002) (describing canon as providing that, when " 'a statute is susceptible of two constructions, by one of which grave and doubtful constitutional ques-

tions arise and by the other of which such questions are avoided, our duty is to adopt the latter.' "), *quoting United States ex rel. Attorney General v. Delaware & Hudson Co.,* 213 U.S. 366, 408, 29 S.Ct. 527, 53 L.Ed. 836 (1909). Appellant argues that, if the license ineligibility and commission of other criminal violations provision is not construed as establishing a new element of the felony offense, the statute will be unconstitutional under *Apprendi* because those factors would serve to increase the maximum penalty he faces by increasing the grading of the crime from misdemeanor to felony level.[8] He also argues that construing his contemporaneous conviction for violating Section 6108 as a disqualifying "other criminal violation" would violate due process and equal protection. Thus, in appellant's view, the avoidance canon weighs in favor of his statutory construction argument.

■ Even assuming merit in appellant's argument that his constitutional sub-arguments are not waived since he ties them to the avoidance canon, it is of no avail on appellant's *Apprendi* claim. The statutory amendment appellant challenges was made effective in June 1997—three full years before *Apprendi* was decided. In *Harris,* the U.S. Supreme Court noted the inapplicability of the avoidance canon in such retroactive circumstances:

> The avoidance canon rests upon our "respect for Congress, which we assume legislates in the light of constitutional limitations." *Rust v. Sullivan,* 500 U.S. 173, 191, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991). The statute at issue in this case was passed when *McMillan [v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) ] provided the controlling instruction, and Congress would have had no reason to believe that it was approaching the constitutional line by following that instruction. We would not further the canon's goal of eliminating friction with our coordinate branch, moreover, if we alleviated our doubt about a constitutional premise we had supplied by adopting a strained

---

8. The Crimes Code authorizes a maximum sentence of seven years of imprisonment for a felony of the third degree, 18 Pa.C.S. § 1103(3), and five years for a misdemeanor of the first degree. *Id.* § 1104(1).

reading of a statute that Congress had enacted in reliance on the premise. And if we stretched the text to avoid the question of *McMillan's* continuing vitality, the canon would embrace a dynamic view of statutory interpretation, under which the text might mean one thing when enacted yet another if the prevailing view of the Constitution later changed. We decline to adopt that approach.

*Harris,* 536 U.S. at 556, 122 S.Ct. at 2413. We agree with this reasoning; thus, we similarly decline to embrace such a dynamic view of the constitutionality of this 1997 legislation, which would measure legislative intent in light of constitutional authority which was non-existent at the time the General Assembly acted. If appellant had a constitutional objection to the statute premised upon the concerns that led to the view embraced by the 5–4 majority in *Apprendi,* he was obliged to specifically forward it below.[9]

■ Appellant's equal protection/due process challenge also fails. Again assuming that this argument may be advanced for the first time on appeal if raised under the avoidance canon, appellant has provided insufficient argument to warrant review. *See Purple Orchid, Inc. v. Pennsylvania State Police,*

9. In any event, we are satisfied that our conclusion *infra* that the amendment sets forth sentencing factors and not a new element of the felony offense does not cross the *Apprendi* line. In *Apprendi,* the Court held that any fact other than a defendant's history of criminal convictions, which increases the available punishment for an offense beyond the applicable statutory maximum penalty, must be determined by a jury on proof beyond a reasonable doubt. 530 U.S. at 490, 120 S.Ct. at 2362–63; *accord Jones v. United States,* 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 1224 n. 6, 143 L.Ed.2d 311 (1999). The *Apprendi* Court thus invalidated a New Jersey statute providing for a sentence enhancement for crimes predicated on racial prejudice, if the sentencing court determined the existence of the enhancement by a preponderance of the evidence. 530 U.S. at 497, 120 S.Ct. at 2366–67. In this case, unlike *Apprendi,* the amendment did not alter the statutory maximum; indeed, it did just the opposite. The General Assembly took an offense which had been graded exclusively as a felony of the third degree and provided for misdemeanor grading of that identical conduct in certain ameliorating circumstances, thus providing for the possibility of *lesser* punishment. Accordingly, even if we were required to view the legislative pronouncement under subsequent constitutional authority, there is no constitutional impediment to construing the statute as establishing sentencing factors.

572 Pa. 171, 813 A.2d 801, 804 (2002) (claims undeveloped in briefs are waived). We note that mere identification of a geographic disparity is insufficient to establish a constitutional violation. *See McGowan v. Maryland,* 366 U.S. 420, 427, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961) (explaining that equality guarantees relate to "equality between persons as such, rather than between areas, and ... territorial uniformity is not a constitutional prerequisite"). Thus, such variations may be constitutionally valid, assuming the presence of a sufficient governmental interest (for example, rational basis or compelling interest, depending upon the character of the interest involved). Here, appellant has failed to identify the applicable constitutional standards, much less to develop his constitutional claims on such terms.

Turning now to the proper construction of the 1997 amendment, we note that Section 6106 identifies a single offense entitled, "Firearms not to be carried without a license." For the reasons that follow, we agree with the Commonwealth that, in amending Section 6106(a) (titled "Offense defined") to include new subsection (a)(2), which provides for a reduction in the available punishment range for this single offense in certain circumstances, the General Assembly did not intend to create *two* crimes, one a felony and one a misdemeanor, with different elements. Instead, the amendment of Section 6106 evidences a legislative intention to provide for a lower grading of the existing single offense of unlicensed possession, already set forth in subsection (a)(1), for certain qualifying individuals.

The statute does not specifically state whether the factors set forth in subsection (a)(2) are intended as a new element of the subsection (a)(1) felony offense, as establishing grounds for an affirmative defense, or as sentencing factors. Nevertheless, the amendatory nature of the provision, its very structure, the narrow object it attains, the consequences of the competing interpretations offered by the parties, and this Court's obligation to read it in a common sense fashion, convince us that the most reasonable reading is to view the amendment as intended to affect grading/sentencing. Prior to the amendment of Section 6106(a) in 1997, the statute simply

proscribed the following conduct: carrying a firearm in a vehicle or concealed upon one's person, anywhere except in one's place of abode or fixed place of business, without a valid license. All violations of the statute were graded as felonies. The 1997 amendment did not change the operative, "forbidden conduct," 18 Pa.C.S. § 103(1), condemned by subsection (a)(1). Rather, the amendment provides for a lesser gradation of an unlicensed firearm offense where the offender possesses certain personal attributes that the General Assembly obviously deemed relevant in mitigation: *i.e.,* license eligibility and never having committed any other crime. It is not difficult to imagine why the General Assembly might statutorily draw this distinction for purposes of punishment: It is one thing to be unlicensed as a result of negligence, ignorance, or indifference, but it is quite another to be absolutely disqualified from licensure and possessing a firearm. Personal status factors such as those set forth in subsection (a)(2)—prior offenses, prior disentitlements—while always relevant for sentencing purposes, have nothing to do with the proscribed conduct covered by Section 6106 generally, and thus it is difficult to discern a legislative intention to treat such status factors as elements of some separate crime.

This Court is also persuaded that the amendment was not intended to establish an additional element of the felony set forth in subsection (a)(1) because of the practical absurdity that would attend such a construction. As the Commonwealth aptly notes:

> [T]he construction ... that the Commonwealth must *disprove* a violation of subsection (a)(2) in order to *prove* a violation of subsection (a)(1), is absurd and unreasonable. Subsections (a)(1) and (a)(2) contain overlapping elements and proscribe the same core conduct.... [The General Assembly] cannot have intended an interpretation of section 6106 whereby the prosecution, in order to prove a violation of section 6106, would have to *prove* those core elements contained in both sections, while *disproving* the two additional "elements" found in subsection (a)(2). Nothing in the

wording of the statute supports such a tortured construction.

Brief for Appellee at 15 (emphases original). More importantly, a construction viewing subsection (a)(2) as establishing additional, negative predicate elements of the felony already set forth in subsection (a)(1) requires this Court to conclude that the General Assembly intended that the Commonwealth, in order to prove its felony case, would not only be permitted, but would actually be required, to introduce evidence concerning the defendant's other crimes or bad acts, bad reputation, or otherwise private history and/or personal characteristics giving rise to an ineligibility to obtain a valid license.

For example, one way the Commonwealth could discharge its burden of proving the alleged "element" of a criminal defendant's ineligibility for misdemeanor conviction would be by showing that he had committed "any other criminal violation." But, of course, there are settled evidentiary limitations upon the use of the defendant's prior bad acts in a criminal prosecution. *See, e.g.,* Pa.R.E. 404(b) (evidence of other crimes, wrongs, or acts, even where relevant for purpose other than to prove character, admissible only if probative value exceeds prejudicial effect). The other manner in which the Commonwealth could discharge its burden is to prove license ineligibility. But the question of license eligibility, which is governed by a separate section of the Uniform Firearms Act, 18 Pa.C.S. § 6109(e), opens the door to a vast potential font of damaging information concerning the defendant's background and character which, though certainly relevant to sentencing issues—indeed, these are the very sorts of things one commonly sees in a pre-sentence report—would generally be prohibited in the criminal prosecution itself because of the potential prejudice such information might cause the defendant.

Section 6109(e)(1) describes no less than thirteen circumstances in which a person is deemed ineligible for a license to carry a firearm. Thus, to prove the "element" of license ineligibility, the Commonwealth could introduce at trial such diverse, prejudicial, and otherwise irrelevant personal infor-

mation as that the defendant: (1) has a "character and reputation" that was such that he "would be likely to act in a manner dangerous to public safety"; (2) has a previous drug conviction; (3) has a conviction for a disqualifying offense under 18 Pa.C.S. § 6105 (defining persons who are not to possess, use, manufacture, etc. firearms, and listing disqualifying criminal convictions); (4) has, within the previous ten years, been adjudicated delinquent for a drug offense or an offense under Section 6105; (5) lacks a sound mind or had been committed to a mental institution; (6) is a drug addict or an unlawful user of narcotics; (7) is an habitual drunkard; (8) is an illegal alien; or (9) has been dishonorably discharged from the armed services.[10] Absent some showing of particularized relevance

10. Section 6109(e) specifically provides, in pertinent part, that:

A license shall not be issued to any of the following:

(i) An individual whose character and reputation is such that the individual would be likely to act in a manner dangerous to public safety.

(ii) An individual who has been convicted of an offense under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act.

(iii) An individual convicted of a crime enumerated in section 6105.

(iv) An individual who, within the past ten years, has been adjudicated delinquent for a crime enumerated in section 6105 or for an offense under The Controlled Substance, Drug, Device and Cosmetic Act.

(v) An individual who is not of sound mind or who has ever been committed to a mental institution.

(vi) An individual who is addicted to or is an unlawful user of marijuana or a stimulant, depressant or narcotic drug.

(vii) An individual who is a habitual drunkard.

(viii) An individual who is charged with or has been convicted of a crime punishable by imprisonment for a term exceeding one year except as provided for in section 6123 (relating to waiver of disability or pardons).

(ix) A resident of another state who does not possess a current license or permit or similar document to carry a firearm issued by that state if a license is provided for by the laws of that state, as published annually in the Federal Register by the Bureau of Alcohol, Tobacco and Firearms of the Department of the Treasury under 18 U.S.C. § 921(a)(19) (relating to definitions).

(x) An alien who is illegally in the United States.

(xi) An individual who has been discharged from the armed forces of the United States under dishonorable conditions.

(xii) An individual who is a fugitive from justice. This subparagraph does not apply to an individual whose fugitive status is based upon

in light of the peculiar facts of the case, such evidence of a defendant's negative character or reputation, or his prior bad acts, or his personal frailties, weaknesses and addictions, generally would not be admissible at trial.

It is highly unlikely that, in modestly changing the unlicensed firearms offense set forth in Section 6106(a) from one that was *always* a felony into one that is *sometimes* a misdemeanor if the defendant possesses a certain history and background, the General Assembly intended to effect a sweeping change in the manner in which daily trials for unlicensed possession of firearms would necessarily have to be conducted.[11] If that were the case, some special provision would have to be made to shield the jury from the otherwise irrelevant, but highly prejudicial information that would be necessary to discharge the Commonwealth's burden at trial. The "injustice, unreasonableness and inconvenience that would follow" a construction of the amendment as setting forth a new element of the felony offense, *Sculley*, 381 Pa. 1, 112 A.2d 321, 325 (1955), help convince us that it was not intended to establish such a new element. *Cf. Almendarez–Torres v. United States*, 523 U.S. 224, 234–35, 118 S.Ct. 1219, 1226, 140 L.Ed.2d 350 (1998) (interpreting subsection of statute fixing penalty for reentry of deported alien who has committed an "aggravated felony" as sentencing factor, not separate offense, because contrary interpretation would "risk[ ] significant prejudice" through introduction of evidence of prior crimes).

In reaching this conclusion, we recognize that this is not a case like *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct.

nonmoving or moving summary offense under Title 75 (relating to vehicles).
(xiii) An individual who is otherwise prohibited from possessing, using, manufacturing, controlling, purchasing, selling or transferring a firearm as provided by section 6105.
*Id.* (footnote omitted).

11. Indeed, since an elements construction of the amendment would require exposure of the fact-finder to what otherwise would be irrelevant and prejudicial personal information, such a construction is not one that interprets the statute "in the light most favorable to the accused." *Commonwealth v. Booth*, 564 Pa. 228, 766 A.2d 843, 846 (2001).

2411, 91 L.Ed.2d 67 (1986). In *McMillan*, the General Assembly specifically designated that the mandatory minimum sentencing provisions at issue, *see* 42 Pa.C.S. § 9712(b), were not to be deemed elements of the crime. Although the General Assembly did not speak that explicitly here, we are no less confident that it did not intend to set forth an additional element of the Section 6106(a)(1) felony offense. This case involves an amendatory statute which retained the primary felony offense intact, but provided a new circumstance, sounding in status factors personal to the defendant which traditionally have affected sentencing, where the very same conduct will result in a *lower* grading of the crime and a *lesser* range of available sentences. Since this amendatory statute works to *reduce* the previously available punishment, the circumstance *sub judice* is the opposite of that presented in *McMillan*. In such an instance, the General Assembly may reasonably have determined that it was unnecessary to employ such specific language to make its intention plain.

■ The considerations which have led us to conclude that the 1997 amendment did not set forth an additional element of the Section 6106(a)(1) felony offense also lead us to conclude that the amendment was not intended to set forth the basis for an affirmative defense to a felony grading. As to this point at least—*i.e.*, the question of affirmative defense construction versus sentencing factors construction—the parties are in agreement. An affirmative defense construction, like an elements construction, would require us to conclude that the General Assembly intended that the fact-finder be exposed to prejudicial and otherwise irrelevant personal status factors before verdict. We will not read the amendment in such an absurd and unreasonable fashion. Rather, we read the amendment as establishing sentencing factors which govern the proper grading of a Section 6106(a) offense. As we have noted above, many of the personal status factors which determine the question of license eligibility are the sort of considerations routinely entertained by a court fashioning an appropriate sentence.

■ Viewing the 1997 amendment as setting forth sentencing factors, we agree with the Superior Court's alternative holding that a felony grading was appropriate here because appellant was adjudged to have committed another criminal violation contemporaneously with his Section 6106 offense—namely, the Section 6108 violation for carrying firearms on the public streets in Philadelphia. Appellant argues that the General Assembly's intent in drafting the "other offense" clause was to require felony gradation for offenders who possess a gun while committing additional non-weapons offenses. But, no such limitation is included within or suggested by the statute. *See* 1 Pa.C.S. § 1921(b) (directing enforcement of clear statutory provisions according to their terms). Further, while the Section 6108 offense is based upon the same incident and general conduct as the Section 6106 offense, the statutes contain distinct and different material elements with respect to concealment and the geographic location of the conduct: *i.e.,* concealment is an element of Section 6106(a) but not of Section 6108, while location in Philadelphia is an element of Section 6108 but not of Section 6106(a). *See Commonwealth v. Whelton,* 319 Pa.Super. 42, 465 A.2d 1043, 1050 (1983) (construing Sections 6106 and 6108 as prescribing separate offenses not subject to merger). Accordingly, we hold that the Section 6108 violation was "any other criminal violation" for purposes of Section 6106(a)(2), thus disqualifying appellant's Section 6106 from misdemeanor grading.

We recognize that the Commonwealth did not invoke the Section 6108 conviction as a basis for grading the Section 6106 conviction as a felony either at trial or at sentencing. Nevertheless, it alleged the felony offense in the charging instrument; the Section 6108 offense was established at trial beyond a reasonable doubt; and appellant does not assert a due process or other notice-based challenge to the reliance of the Commonwealth and the Superior Court upon Section 6108, but rather rests his objection to the statute's relevance upon substantive grounds, *i.e.,* the similarity of the conduct outlawed by Sections 6106 and 6108. In addition, it is settled that the Superior Court, which sat in review of the trial court's

judgment as well as its rationale, had the power to affirm that judgment for any proper reason appearing in the record. *See Commonwealth v. Shaw*, 494 Pa. 364, 431 A.2d 897, 899 n. 1 (1981).

Because the fact of appellant's contemporaneous and disqualifying Section 6108 conviction is indisputable, our resolution in this case does not require us to determine which party has the burden of proving the appropriate grading of a Section 6106 offense at sentencing. When the disqualifying factor is another criminal violation, it is unlikely that assigning a burden of proof would matter: there is either a disqualifying criminal violation or there is not. Such is the controlling situation here. With respect to license eligibility/ineligibility, however, the potential disqualifying factors are more numerous and more difficult of proof. The parties appear to agree that if this Court determines that a sentencing factors reading is the appropriate one, then the Commonwealth bears the burden of proof at sentencing by a preponderance of the evidence. But we are not so easily convinced that such was the intent of the General Assembly. Many of the license-disqualifying factors are very personal to the defendant and he certainly is in the better position to produce evidence on the subjects. In addition, since we have concluded that the statute continues to define a presumptive felony offense, viewing license eligibility as a matter of sentencing mitigation subject to proof by the defendant may be the better reading. In any event, since we have decided the matter on the basis of appellant's disqualifying Section 6108 conviction, we need not definitively resolve the question of the burden of proof to resolve this appeal.[12]

In summary, we hold that the 1997 amendment to Section 6106(a) sets forth a grading/sentencing provision, and not an additional element of the felony offense set forth in subsection (a)(1) or an affirmative defense. Whether the offense should

12. We also need not and do not decide the merit of the Commonwealth's argument that the defendant should have a preliminary burden of producing some evidence that he has a proper reason for carrying a firearm.

be graded as a felony or a misdemeanor is a matter to be decided at sentencing. In light of appellant's contemporaneous conviction under Section 6108, the Section 6106(a) offense here was properly graded as a felony.[13] Accordingly, the Superior Court's order is affirmed.

Justice SAYLOR files a concurring opinion.

Justice NIGRO files a dissenting opinion.

Justice SAYLOR, concurring.

Although I concur in the result, I would hold that the statutory criteria by which a perpetrator of the offense of carrying a firearm without a license is adjudged to have committed a felony or misdemeanor, *see* 18 Pa.C.S. § 6106, are substantive elements of the crimes, as opposed to sentencing factors (as the majority holds) or affirmative defenses (as the Superior Court determined). My reasoning follows.

First, it is significant, at least to me, that the relevant provision appears in the Crimes Code, as opposed to the Sentencing Code. *See Almendarez–Torres v. United States,* 523 U.S. 224, 234, 118 S.Ct. 1219, 1226, 140 L.Ed.2d 350 (1998).

Second, in the Crimes Code, the Legislature has broadly defined an element of an offense, *inter alia,* as:

Such conduct or such attendant circumstances or such a result of conduct as:

(1) is included in the description of the forbidden conduct in the definition of the offense; [or]

(2) establishes the required kind of culpability[.]

18 Pa.C.S. § 103. Section 6106(a)(2)'s eligibility terms qualify as elements under both of these provisions, since they are attendant circumstances expressly included in the description of the offenses and establish the requisite culpability for misdemeanor versus felony treatment.

**13.** It bears noting that the two-year probationary sentence imposed here would have been lawful whether the offense was graded as a third degree felony or a first degree misdemeanor. *See* n. 8, *supra.*

Third, the General Assembly is aware of how to designate a fact or circumstance as an affirmative defense or sentencing factor, *see, e.g.,* 42 Pa.C.S. § 9712(b), *discussed inMcMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), which it simply has not done here.

Fourth, it is at least noteworthy that questions related to the issue before the Court arose during floor debates on the 1997 amendment in which paragraph 6106(a)(2) was added to the statute, *see* Pub.L. 73, No. 5, § 1, April 22, 1997, and the comments of the bill's proponents tend to reinforce that the facial distinction made between the misdemeanor and felony provisions of Section 6106 was intended as a substantive one. *See, e.g.,* Pa. Leg. Journal (House), April 9, 1997, at 730 (statement of Rep. Gannon, Chairman of the House Judiciary Committee) (stating that if a person "met all of the qualifications for the issuing of a license to carry a concealed weapon [but did not do the requisite] paperwork, and [he] still carried a concealed weapon, that is a misdemeanor"); *id.* ("if you could have legally carried a firearm under other circumstances, it is a misdemeanor"); *id.* at 733 (statement of Rep. McCall) (amendment is designed "not to make felons out of those people who are law-abiding citizens and people who do not have any kind of felonious intent"); *id.* (if an unlicensed gun owner "has always been a law-abiding citizen [and] would have been able to have a license to carry a gun[,] she should not be charged with a felony; she should be charged with a misdemeanor–1"). These and similar statements, while far from dispositive, do suggest that the 1997 amendment was motivated by a perception that an individual who had neglected to obtain a license but could have done so should not be called to defend himself against felony charges. *Cf. Staples v. United States,* 511 U.S. 600, 610, 114 S.Ct. 1793, 1799, 128 L.Ed.2d 608 (1994) (describing the "long tradition of lawful gun ownership by private individuals in this country," and the attendant presumption against criminalizing gun possession without the requisite illegal intent).

Fifth, in establishing principles of statutory construction applicable to criminal offenses, the General Assembly has

directed that, when language is susceptible of differing constructions, it is to be interpreted to further the general purposes stated in the Crimes Code and the special purposes of the particular provision involved. *See* 18 Pa.C.S. § 105. Even conceding that the legislative commentary should not overemphasized in construing Section 6106, the general purposes of the Crimes Code include safeguarding offenders against excessive and disproportionate punishment and differentiating among offenders with a view to a just individualization in their treatment. *See* 18 Pa.C.S. § 104(3), (5). While another express purpose is to forbid and prevent conduct that unjustifiably inflicts or threatens substantial harm to individual or public interests, this purpose would seem to be accommodated by merely recognizing the General Assembly's decision to delineate the lesser of the two instances of proscribed conduct as a misdemeanor of the first degree, *see* 18 Pa.C.S. § 6106(a), carrying a maximum potential sentence of up to five years, *see* 18 Pa.C.S. § 1104(1).

Additionally, a more technical assessment of Section 6106 also favors the elements construction. In the absence of express designation, in determining legislative intent regarding offense elements versus affirmative defenses, courts have evaluated: (1) the language and structure of the statute; (2) the character of the factor or exception in question within its context; (3) relevant legislative history; and (4) whether the defendant or the Commonwealth is better situated to prove facts necessary to trigger or negate the exception, *see Commonwealth v. Stoffan,* 228 Pa.Super. 127, 144, 323 A.2d at 323, 326 (1974); *accord United States v. McArthur,* 108 F.3d 1350, 1353 (11th Cir.1997). With regard to distinguishing elements and sentencing factors, courts have also considered prejudice that may inure to the defendant as a consequence of development of the fact or circumstance before the jury in the adjudication of guilt or innocence. *See, e.g., Almendarez–Torres,* 523 U.S. at 234–35, 118 S.Ct. at 1226.

With respect to language and structure, various interpretive presumptions are frequently employed. First, a distinction is drawn between exceptions fused integrally into the definition

of the offense (and therefore deemed to reflect integral aspects of the forbidden conduct) and those styled as distinct provisos.[1] As noted above, elements treatment has been favored for "except clauses," particularly those preceding the core description of the offense, *see Commonwealth v. Bavusa*, 750 A.2d 855, 860 (Pa.Super.2000), versus an inclination toward construction of subsequent "unless clauses" as affirmative defenses. *See id.; see also Commonwealth v. Bigelow*, 484 Pa. 476, 483, 399 A.2d 392, 395 (1979) ("The United States Supreme Court has never required the prosecution to negate the language of a proviso."); *Commonwealth v. Banellis*, 452 Pa.Super. 478, 485, 682 A.2d 383, 387 (1996) (distinguishing a proviso from an "except clause").

In considering an exception's character, courts generally make some primary assessment concerning its substantive relationship to the definition of the crime. For example, exceptions reflecting facts or circumstances materially interrelated with the primary criminal conduct constituting the offense are distinguished from those which merely furnish an excuse for what would otherwise be criminal conduct or layer some more tangential factor or circumstance into the calculus. Exceptions of the former character obviously favor the elements construction; those in latter nature militate toward a

1. As elaborated by the Superior Court:

> When a statute defining an offense contains an exception ... which is so incorporated with the language defining the offense that the ingredients of the offense cannot be accurately described if the exception is omitted, the rules of good pleading require that an indictment founded upon the statute must allege enough to show that the accused is not within the exception, but if the language of the clause defining the offense is so entirely separable from the exception that the ingredients constituting the offense may be accurately and clearly defined without any reference to the exception, ... the matter contained in the exception is a matter of defense and must be shown by the accused.

*Stoffan*, 228 Pa.Super. at 140, 323 A.2d at 324 (quoting *Commonwealth v. Neal*, 78 Pa.Super. 216 (1922)); *accord United States v. Kloess*, 251 F.3d 941, 945 (11th Cir.2001) (explaining that the appearance of the contested language "in a distinct clause, in a different section of the statute[,] suggests that it is not an element of the crime"); *United States v. Outler*, 659 F.2d 1306, 1309–10 (5th Cir.1981) (where "an exception ... [is] so necessary to a true definition of the offense ... the elements of the crime are not fully stated without the exception").

construction imposing a duty upon the defendant to bring himself within the exculpatory provision. *See Stoffan*, 228 Pa.Super. at 142, 323 A.2d at 325. Further, distinctions have been drawn according to the breadth of an exception. *See McArthur*, 108 F.3d at 1353 (explaining that "a narrow proviso to a more general statutory offense is more likely to be an affirmative defense than an element of the offense"); *accord McKelvey v. United States*, 260 U.S. 353, 357, 43 S.Ct. 132, 134, 67 L.Ed. 301 (1922) ("an indictment . . . founded on a general provision defining the elements of an offense . . . need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere"). The impact of the exception in terms of character and severity of punishment is also a significant consideration. *See generally Apprendi v. New Jersey*, 530 U.S. 466, 494–95, 120 S.Ct. 2348, 2365, 147 L.Ed.2d 435 (2000) (determining that the effect of a New Jersey sentencing enhancement was "unquestionably to turn a second-degree offense into a first-degree offense[;][t]he degree of criminal culpability the legislature chooses to associate with particular, factually distinct conduct has significant implications both for a defendant's very liberty, and for the heightened stigma associated with an offense the legislature has selected as worthy of greater punishment").

Here, the language of Section 6106(a)(1) employs a precedent "except clause" to distinguish the felony versus misdemeanor designations, thus favoring the elements construction. *Compare Commonwealth v. Lopez*, 523 Pa. 126, 128, 565 A.2d 437, 438 (1989); *Banellis*, 452 Pa.Super. at 485, 682 A.2d at 387. Further, subsections 6106(a)(1) and (a)(2) are structured such that each repeats, in full, all elements of the unlawful conduct. While the degree to which the fact of license ineligibility should be viewed as part and parcel of the core criminal conduct is arguable,[2] its impact in terms of the severity of

2. I recognize that many of the factors included in Section 6106(a)(2)'s assessment via incorporation from Section 6109(e) are in the nature of traditional sentencing factors, at least as the sentencing scheme existed prior to the implementation of the present paradigm. *Compare Commonwealth v. Jones*, 523 Pa. 138, 141–42, 565 A.2d 732, 733 (1989)

punishment by virtue of the felony versus misdemeanor treatment is substantial. Additionally, the legislative history of Section 6106 tends to suggest the elements construction. *See supra.* Both parties agree that the burden of proof is most appropriately allocated to the Commonwealth.[3] Finally, there is the potential for prejudice in the presentation of license ineligibility factors to a jury; however, this factor is ameliorated by the availability of cautionary instructions, and, in instances in which a trial court would deem it necessary, bifurcation. In my view, the majority's decision to label as absurd an interpretation that implicates the potential for precautionary measures at trial in some cases is unjustified, as countervailing and substantial liabilities attach to each of the approaches under consideration.

In light of the above, I deem the pertinent factors, considered in their totality, to favor allocation of the determination of the degree of criminal fault to the factfinder. While the Superior Court's reasoning is not without foundation, I do not consider employment by the Legislature of the drafting technique of incorporation by reference to be controlling.[4] Partic-

(designating the defendant's prior criminal record and personal characteristics as sentencing factors), *with* 18 Pa.C.S. § 6109(e) (identifying analogous factors as relevant to license ineligibility). It is significant, however, that under Section 6106(a), these factors are not evaluated as sentencing considerations in and of themselves, but are relevant only to the extent that they pertain to the designated elemental fact (the defendant's license eligibility).

3. In this regard, I acknowledge the Commonwealth's contention that defendants should bear a threshold burden of establishing some proper purpose for firearms licensure. Notably, however, the primary decision cited by the Commonwealth, *Commonwealth v. Sojourner,* 268 Pa.Super. 488, 408 A.2d 1108 (1979), concerned an exception styled as a distinct proviso. *See id.* at 492, 408 A.2d at 1110 (quoting 35 P.S. § 780-113(16) (qualifying the offense of knowing or intentional possession of a controlled substance with the proviso, "unless the substance was obtained directly from ... a valid prescription ... or as otherwise authorized by this act")). Therefore, the subject matter was more appropriately amenable to application of a burden-shifting paradigm.

4. As Bavusa argues, the incorporation by reference device is frequently employed by the Legislature as a space-saving device, *see, e.g.,* 18 Pa.C.S. § 2710 (incorporating elements of various underlying offenses into the crime of ethnic intimidation), and thus, may be regarded as a weak indicator of substantive legislative intent.

ularly since, as noted, the Legislature is aware of how to designate a fact or circumstance as an affirmative defense or sentencing factor, I favor application of the traditional and more conservative judicial approach, namely, maintaining an elements construction in the face of this uncertain legislative pronouncement, unless and until the General Assembly prescribes differently.[5] As also previously indicated, I believe that this comports with the Legislature's directive to construe the Crimes Code in accordance with its general purposes, and the purposes of the provision at issue. *See supra.*

I would hold, therefore, that in order for the Commonwealth to secure a felony conviction pursuant to Section 6106(a)(1), it must establish beyond a reasonable doubt that the conditions in paragraph 6106(a)(2) have not been met. Accordingly, the Commonwealth should be required to demonstrate the existence, at the time of a Section 6106 violation, of an impediment the defendant's eligibility to possess a valid license to carry

---

**5.** In this regard, I also draw guidance from the cautionary observations of other courts in instances in which legislative bodies have not specified the treatment intended to be given exceptions. *See, e.g., State v. McLemore,* 782 S.W.2d 127, 129 (Mo.Ct.App.1989) ("There is no certain principle ... to use to determine when a qualification of the scope of the proscribed conduct should be viewed as a matter of excuse or justification as distinguished from a basic element of the crime[;][c]ourts have continuously wrestled with this problem and consistently have been pinned to the mat."); *id.* at 130 ("Reliance on the positioning of the exception or proviso to determine whether it defines an element of the crime gives preeminence to what may be an accident of drafting, rather than an analysis of the exception or proviso and its relevance to the culpability of the accused."); *Hall v. State,* 291 Ala. 397, 281 So.2d 662, 664 (1973) (criticizing the intermediate appellate court for "la[ying] too much emphasis on the grammatical construction of the [a]ct rather than upon the essential elements of the offense denounced"); *People v. Devinny,* 227 N.Y. 397, 125 N.E. 543, 544 (1919) ("Attempts to ... distinguish between exceptions and provisos have resulted in many technicalities and in much subtlety[;][t]he two classes of provisos—exceptions and provisos—frequently come close together[.]"); *People v. Franzoni,* 75 Misc.2d 246, 347 N.Y.S.2d 910, 914 (1973) ("The rule requiring pleading and proof by the People of negative exceptions in a criminal statute has been described in an exhaustive annotation as presenting 'one of the most frequent problems in criminal procedure, yet often one of the most baffling.'" (citation omitted)); *cf. Apprendi,* 530 U.S. at 494, 120 S.Ct. at 2365 (characterizing the distinction between sentencing factors and elements as "constitutionally novel and elusive").

firearms, or the defendant's commission of another criminal violation.

I am able to join the majority's disposition, however, as I agree that the Commonwealth established at trial beyond a reasonable doubt that Bavusa committed another criminal offense (violation of 18 Pa.C.S. § 6108), thus disqualifying him from misdemeanor treatment.

NIGRO, Justice, dissenting opinion.

Appellant was found guilty of violating Sections 6106 (Firearms not to be carried without a license) and 6108 (Carrying firearms on public streets or public property in Philadelphia) of the Pennsylvania Uniform Firearms Act based upon the same single act of possessing an unlicensed revolver in his waistband in Philadelphia.[1] He was sentenced to probation for concurrent terms of two years for each offense, a sentence the majority now upholds. Contrary to the majority, I believe that convictions under Section 6106 and Section 6108 merge for purposes of sentencing, and therefore I must respectfully dissent from the majority's conclusion that the Superior Court properly affirmed Appellant's judgment of sentence.

1. Section 6106 provides in relevant part:

(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits *a felony of the third degree.*

(2) A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license *and has not committed any other criminal violation commits a misdemeanor of the first degree.*

18 Pa.C.S. § 6106(a) (emphasis added). Section 6108 provides:

No person shall carry a firearm, rifle or shotgun at any time *upon the public streets or upon any public property in a city of the first class* unless:

(1) such person is licensed to carry a firearm; or

(2) such person is exempt from licensing under section 6106 of this title (relating to firearms not to be carried without a license).

18 Pa.C.S. § 6108 (emphasis added).

The majority concludes, and I agree, that in order for the Commonwealth to secure a felony conviction pursuant to Section 6106(a)(1), it must establish beyond a reasonable doubt that the conditions in Section 6106(a)(2) have not been met. As noted above, Section 6106(a)(2) provides:

> A person who is otherwise eligible to possess a valid license under this chapter but ... carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid or lawfully issued license and has not committed *any other criminal violation* commits a misdemeanor of the first degree.

18 Pa.C.S. § 6106(a)(2) (emphasis added). Thus, in order to sustain Appellant's felony conviction pursuant to Section 6106(a)(1), it must be shown that Appellant, at the time of his Section 6106 violation, either was not otherwise eligible to possess a valid license to carry firearms or committed "any other criminal violation." *See id.* The majority concludes that Appellant's felony conviction is sustainable because, according to the majority, Appellant's simultaneous Section 6108 violation can properly be classified as an "other criminal violation" for purposes of Section 6106. In support of its conclusion, the majority finds that Sections 6106 and 6108 contain materially different elements in terms of concealment and geographic location of the conduct, a finding which renders merger analysis inapplicable. *See Commonwealth v. Whelton*, 319 Pa.Super. 42, 465 A.2d 1043, 1050 (1983) (construing Sections 6106 and 6108 as prescribing separate offenses not subject to merger).[2] I disagree with this conclusion.

2. Although the Commonwealth has often charged defendants with violations of both Sections 6106 and 6108, *see, e.g., Commonwealth v. Smith*, 518 Pa. 15, 540 A.2d 246, 251 (1988); *Commonwealth v. Romero*, 449 Pa.Super. 194, 673 A.2d 374, 376 n. 2 (1996), and occasionally defendants have been convicted of both offenses, *see Commonwealth v. Queen*, 536 Pa. 315, 639 A.2d 443, 444 (1994) (defendant convicted of both offenses and sentenced to six months imprisonment on each conviction), the Commonwealth has just as often decided to charge defendants only with violations of Section 6108. *See, e.g., Commonwealth v. Woods*, 710 A.2d 626, 630 (Pa.Super.1998); *Commonwealth v. Perry*, 1992 WL 1071435, *1 (Pa.Com.Pl.1992).

The central inquiry of a merger analysis is whether the crimes are greater and lesser-included offenses. To complete this inquiry, we first look at the elements of each offense. If all of the elements of the lesser offense are within the elements of the greater, and the greater offense includes at least one additional element, then the sentences merge. *Commonwealth v. Anderson*, 538 Pa. 574, 650 A.2d 20, 22 (1994).

Applying these principles here, I would find that Section 6106 and Section 6108 merge for sentencing purposes. As stated above, Section 6106(a) provides that "any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license ... commits a felony of the third degree," subject to the exceptions provided in subsection (a)(2). 18 Pa.C.S. § 6106(a)(1). Section 6108 provides that "[n]o person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless: (1) such person is licensed to carry a firearm; or (2) such person is exempt from licensing under Section 6106." *Id.* § 6108. Thus, a conviction for a violation of Section 6106 is established when a defendant carries a concealed firearm on or about his person without a license in any public place. At the same time, a conviction for a violation of Section 6108 is established when a defendant commits the very same offense, as long as he does so while in Philadelphia (the only city of the first class in this Commonwealth). As a case in point, Appellant was found guilty of violating Section 6106 for carrying a concealed gun while unlicensed, and found guilty of violating Section 6108 simply because he was doing so in Philadelphia. While Sections 6106 and 6108 may address different circumstances in which a person can unlawfully possess a gun, the essence of each is the same—unlawful possession of a gun. As such, the only difference that I can ascertain between the two offenses is with regard to the location of the offense.

Given that Section 6108 contains all of the elements of Section 6106, and that Section 6108 includes one additional element, I would conclude that the offenses merge for pur-

poses of sentencing. *See Anderson,* 650 A.2d at 22. Accordingly, I cannot agree with the majority's conclusion that Appellant's Section 6108 violation constitutes "any other criminal violation" for purposes of 6106(a)(2), thereby converting Appellant's Section 6106 offense from a misdemeanor into a felony. *See* Maj. Op. at 23.[3] I would reverse the decision of the Superior Court affirming Appellant's judgment of sentence.

3. Based on the majority's conclusions, it would seem that a violation of Section 6108 in Philadelphia simultaneously establishes Section 6106 felony gradation, thereby precluding defendants who commit a Section 6106 offense within Philadelphia from misdemeanor gradation, although such conduct would constitute a misdemeanor everywhere else in the state. Thus, as a practical matter, the majority creates a disparate rule whereby violations of Section 6106 constitute a misdemeanor of the first degree, unless the violation occurs in Philadelphia, in which case the offense becomes a felony in the third degree.