J-S30015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| KEVIN AMILL-TORRES | : | |
| Appellant | : | No. 2253 EDA 2024 |

Appeal from the Judgment of Sentence Entered April 26, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002991-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| KEVIN AMILL-TORRES | : | |
| Appellant | : | No. 2254 EDA 2024 |

Appeal from the Judgment of Sentence Entered April 26, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002992-2020

BEFORE:   OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 2, 2025**

In this consolidated appeal,[1] Appellant, Kevin Amill-Torres, appeals from

the April 26, 2024 judgments of sentence imposed by the Court of Common

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] In a March 11, 2025 *per curiam* order, this Court granted Appellant's application to consolidate the appeals filed with this Court at docket numbers 2253 EDA 2024 and 2254 EDA 2024. *Per Curiam* Order, 3/11/25.

Pleas of Philadelphia County after a jury convicted Appellant of murder of the first degree at trial court docket CP-51-CR-0002992-2020 ("Case CR-2992"), as well as voluntary manslaughter – individual killed, carrying firearms on public streets or public property in Philadelphia ("VUFA"), and possessing instruments of crime ("PIC") at trial court docket CP-51-CR-0002991-2020 ("Case CR-2991").[2] The trial court sentenced Appellant to an aggregate term of life imprisonment without the possibility of parole to be followed by 5 to 10 years' incarceration.[3] On August 22, 2025, counsel for Appellant, Daniel A. Alvarez, Esquire ("Attorney Alvarez") filed a petition with this Court seeking to withdraw as counsel for Appellant. We affirm Appellant's judgment of sentence and grant Attorney Alvarez's request to withdraw as counsel.

The trial court summarized the factual and procedural history as follows:

On August 31, 2019, around 6:50 a.m., Appellant shot and killed Felix Mota-Montilla [("Mr. Mota-Montilla")] and Jeffery Otero [("Mr. Otero")] after engaging in a brawl outside of an after-hours

_____

[2] 18 Pa.C.S.A. §§ 2502(a), 2503(a)(1), 6108, and 907(a) respectively.

Appellant's judgments of sentence were made final by the denial of his post-sentence motion on July 23, 2024.

[3] In Case CR-2992, the trial court sentenced Appellant to life imprisonment without parole for his first-degree murder conviction. Order of Sentence (Case CR-2992), 4/26/24. In Case CR-2991, the trial court sentenced Appellant to 5 to 10 years' incarceration for his voluntary manslaughter conviction and a concurrent sentence of 1 to 2 years' incarceration for his VUFA conviction. Order of Sentence (Case CR-2991), 4/26/24. No further penalty was imposed for his PIC conviction. The aggregate sentence of 5 to 10 years' incarceration imposed in Case CR-2991 was set to run consecutively to the sentence of life imprisonment imposed in Case CR-2992.

club on North 4th Street in Philadelphia[, Pennsylvania]. At approximately 6:47 a.m., Appellant and a group of his friends, which included Jeffery Tabarez [("Mr. Tabarez")], were leaving the club when they discovered Mr. Mota-Montilla and Mr. Otero harassing their inebriated friend "Mike" who was unconscious on the curb. An argument between the two groups commenced, which quickly escalated when Mr. Otero, using a .40 caliber handgun, fired shots at Appellant's group, ultimately striking Appellant's friend Shawn Harrison. In response, Appellant took possession of Mr. Tabarez's .9mm handgun and promptly delivered a non-fatal gunshot wound to Mr. Mota-Montilla's jaw, incapacitating him.

Simultaneously, a physical altercation between Mr. Tabarez and Mr. Otero ensued until Mr. Tabarez knocked Mr. Otero out, rendering him unconscious on the ground. While Mr. Otero was unconscious, Appellant put the barrel of the 9mm handgun directly against Mr. Otero's head and executed him. Appellant then turned to Mr. Mota-Montilla and fired an additional shot into his chest while he [lay] incapacitated. Thereafter, Appellant and Mr. Tabarez fled the scene in the latter's car and parted ways in the North Philadelphia area.

While Appellant and Mr. Tabarez fled, Mr. Mota-Montilla and Mr. Otero were rushed to [the h]ospital, where the [two individuals] were eventually declared deceased. Police investigators recovered video footage [that] captured the entirety of the fight between the two groups[,] which ended with Appellant, identifiable by his unique red shirt and tattoos, killing both victims. Police investigators also recovered ten [] .40 caliber [fired cartridge casings], one [] live .40 caliber round, and four [] .9mm [fired cartridge casings]. Ballistics testing [confirmed] that the .9mm [fired cartridge casings] were all fired from the same gun. Additionally, during the autopsy of Mr. Mota-Montilla, the medical examiner recovered a bullet from Mr. Mota-Montilla's chest which was later identified as a .9mm round.

Later in the afternoon of August 31, 2019, Philadelphia police arrested Mr. Tabarez and seized his car for further investigation. Mr. Tabarez ultimately cooperated with the police and explained how the fight broke out and how Appellant took it upon himself to kill Mr. Mota-Montilla and Mr. Otero even after the fight had ended in his favor. On September 4, 2019, police executed a search warrant at Appellant's home[.] Appellant, however, had already fled [the Philadelphia area]. On October 8, 2019, a [United

States] Marshals Task Force specifically assigned with locating Appellant apprehended Appellant in Ocala, Florida.

After extradition back to Philadelphia, Pennsylvania, Appellant was subsequently charged with[, *inter alia*, the aforementioned criminal offenses] in relation to the deaths of [Mr.] Mota-Montilla and [Mr.] Otero.

Appellant's jury trial commenced before [the trial] court on January 29, 2024. On February 1, 2024, after hearing all evidence and arguments from counsel, [at Case CR-2991,] a jury found Appellant guilty of voluntary manslaughter, VUFA[, and PIC] in relation to the death of [Mr.] Mota-Montilla[. At Case CR-2992, a jury found Appellant] guilty of Murder of the First Degree for the death of [Mr.] Otero.

[The trial] court subsequently held a sentencing hearing for Appellant on April 26, 2024. After hearing statements from both victims' families and considering Appellant's mental health evaluation, [pre-sentence investigation] report, prior record score, the sentencing guidelines, arguments from counsel, and the facts and circumstances of this case, [the trial] court [sentenced Appellant as detailed *supra*.]

On May 6, 2024, Appellant filed a timely post-sentence motion raising weight of the evidence claims and requesting a vacation of his judgment[s] of sentence[,] which [the trial] court denied on July 23, 2024. On August 21, 2024, Appellant's counsel filed a timely notice of appeal from the judgment[s] of sentence imposed on April 26, 2024. On September 3, 2024, [the trial] court directed Appellant to file a [Pennsylvania Rule of Appellate Procedure] 1925(b) statement of errors complained of on appeal.

Trial Court Opinion, 1/16/25, at 1-4 (record citations, extraneous capitalization, and section headings omitted). Appellant filed his Rule 1925(b) concise statement on October 16, 2024, and the trial court filed its Rule 1925(a) opinion on January 16, 2025.

Appellant raises the following issues for our review:

[1.] Was the evidence insufficient to sustain the conviction for [first-degree murder at Case CR-2992], as the

Commonwealth failed to disprove beyond a reasonable doubt, [Appellant's] genuine belief that he was using justified force and that he could not retreat to complete safety[?] The evidence was insufficient to prove malice [to support a conviction of first-degree murder], as [Appellant] did not kill in a willful, deliberate, and premeditated manner, but under the genuine belief he acted in justified defense of himself and others[.]

[2.] Was the evidence insufficient to sustain the conviction for PIC [at Case CR-2991], as [Appellant] did not possess the firearm with the specific intent to employ it criminally?

[3.] Was the evidence insufficient to support the [conviction] for VUFA[ at Case CR-2991,] as there lacked sufficient evidence proving [Appellant] specifically possessed the firearm for any unlawful purpose, as it was possessed under circumstances where he genuinely believed he was using it for self-defense?

[4.] Did the trial court err in ruling that the Commonwealth could introduce evidence of [Appellant's] prior firearm conviction (a crime of non-violence), in order to rebut the introduction of [Appellant's] reputational evidence for non-violence and peacefulness[?] As a result, [Appellant] did not introduce character evidence, and had he been able to do so, it would have refuted the malice element for [first-degree murder][.]

Appellant's Brief at 8.

The sufficiency challenges that Appellant develops in his first three issues target the evidence proffered by the Commonwealth to establish the *mens rea*. At Case CR-2992, Appellant claims that the evidence did not overcome his assertion of self-defense and did not support his first-degree murder conviction because it was insufficient to establish that he acted with the intent to kill Mr. Otero. At Case CR-2991, Appellant claims that the evidence did not establish that he intended to employ his firearm criminally or that he possessed a firearm for an unlawful purpose. As such, Appellant

claims that the evidence did not support his convictions for VUFA or PIC. We use the following standard of review when assessing sufficiency challenges like those advanced by Appellant.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the [fact-finder,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Reed*, 216 A.3d 1114, 1119 (Pa. Super. 2019).

We begin with the sufficiency challenge Appellant makes in attacking his conviction at Case CR-2992. Here, Appellant claims that the evidence was insufficient to overcome a claim of self-defense or prove an intent to kill in the shooting death of Mr. Otero. As such, Appellant maintains that the evidence at Case CR-2992 only proves imperfect self-defense, which should, at most, have resulted in a voluntary manslaughter conviction.

Section 2502(a) of the Crimes Code states that "[a] criminal homicide constitutes murder of the first degree when it is committed by an intentional

killing." 18 Pa.C.S.A. § 2502(a). Thus, to convict a person of first-degree murder, the Commonwealth must establish beyond a reasonable doubt that "(1) a human being was unlawfully killed; (2) the defendant is responsible for the killing; and (3) the defendant acted with malice and the specific intent to kill." **Commonwealth v. Haney**, 131 A.3d 24, 33 (Pa. 2015). Here, Appellant asserts that the evidence was insufficient to establish that he acted with "malice and the specific intent to kill." Appellant's Brief at 28 (stating, "[t]he evidence was insufficient to establish [Appellant] committed a deliberate and intentional killing").

Section 2502(d) defines "intentional killing" as "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate[,] and premeditated killing." 18 Pa.C.S.A. § 2502(d); **see also Haney**, 131 A.3d at 36. "Specific intent to kill can be proven where the defendant knowingly applies deadly force to the person of another[,]" and the "Commonwealth may prove specific intent through purely circumstantial evidence." **Haney**, 131 A.3d at 36 (citations and original quotation marks omitted). "Specific intent may be formed in an instant, [] and it can be discerned from the conduct and attending circumstances that show the perpetrator's state of mind." **Commonwealth v. Newton**, 318 A.3d 133, 139 (Pa. Super. 2024) (citations omitted), *appeal denied*, 333 A.3d 647 (Pa. 2025). A jury "may [infer] the intent to kill based on the accused's use of a deadly weapon on a vital part of the victim's body [] or in the general area in which vital organs are located." **Newton**, 318 A.3d at 139 (citation and original quotation marks omitted)

(stating, "[t]he deadly weapon presumption is a presumption of fact founded on human experience, since one does not normally use a deadly weapon on a vital part of another's body unless he [or she] intends to kill" (citation and original quotation marks omitted)). "Likewise, malice may also be inferred from the use of a deadly weapon on a vital portion of the victim's body."[4] **Commonwealth v. Briggs**, 12 A.3d 291, 306 (Pa. 2011), *cert. denied*, 565 U.S. 889 (2011).

Appellant not only claims that the evidence was insufficient to prove that he intended to kill Mr. Otero, but he also asserts that it was insufficient to overcome his assertion of self-defense. In developing this aspect of his argument, Appellant recounts his violent encounter with the victims and alludes to his claims of self-defense, concluding that, while the Commonwealth may have proven that he harbored an unreasonable belief that he needed to shoot the victims, it failed to disprove that his belief was genuine.[5]

The doctrine of self-defense in Pennsylvania posits that: "The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present

---

[4] Malice, to support the prosecution for criminal homicide, has been identified as "[t]hat wicked and depraved disposition and that recklessness and disregard of human life[.]" **Commonwealth v. Packer**, 168 A.3d 161, 169 (Pa. 2017).

[5] As we explain more fully below, Appellant's contention here is that the Commonwealth failed to refute his imperfect self-defense claim.

occasion." 18 Pa.C.S.A. § 505(a). "In order for a defendant to successfully claim self-defense, he or she must meet the following three elements: (1) the defendant reasonably believed that he [or she] was in imminent danger of death or serious bodily injury and that the use of deadly force was necessary to prevent such harm; (2) the defendant did not provoke the incident which resulted in the victim's death; and (3) the defendant did not violate any duty to retreat." ***Commonwealth v. Patterson***, 180 A.3d 1217, 1231 (Pa. Super. 2018), *appeal denied*, 229 A.3d 562 (Pa. 2020). When a defendant claims self-defense, as Appellant did in the case *sub judice*, "the Commonwealth has the burden of disproving self-defense beyond a reasonable doubt and may do so by disproving any one of the three self-defense elements the defendant must meet." ***Patterson***, 180 A.3d at 1231.

"The Commonwealth can negate a self-defense claim if it proves the defendant did not reasonably believe he [or she] was in imminent danger of death or great bodily injury and it was necessary to use deadly force to save himself [or herself] from that danger." ***Commonwealth v. Smith***, 97 A.3d 782, 787 (Pa. Super. 2014), *relying on* ***Commonwealth v. Sepulveda***, 55 A.3d 1108, 1124 (Pa. 2012). Similarly, "the Commonwealth negate[s] a self-defense claim by proving [the defendant] used greater force than was reasonably necessary to protect against death or serious bodily injury." ***Commonwealth v. Truong***, 36 A.3d 592, 599 (Pa. Super. 2012) (*en banc*), *appeal denied*, 57 A.3d 70 (Pa. 2012).

> The requirement of a reasonable belief encompasses two aspects, one subjective and one objective. First, the defendant must have acted out of an honest, bona fide belief that he [or she] was in imminent danger, which involves consideration of the defendant's subjective state of mind. Second, the defendant's belief that he [or she] needed to defend himself [or herself] with deadly force, if it existed, must be reasonable in light of the facts as they appeared to the defendant, a consideration that involves an objective analysis.

*Commonwealth v. Mouzon*, 53 A.3d 738, 752 (Pa. 2012) (citation and quotation marks omitted). "A number of factors, including whether complainant was armed, any actual physical contact, size and strength disparities between the parties, prior dealings between the parties, threatening or menacing actions on the part of complainant, and general circumstances surrounding the incident, are all relevant when determining the reasonableness of a defendant's belief that the use of deadly force was necessary to protect against death or serious bodily injuries." *Smith*, 97 A.3d at 788.

"A defense of 'imperfect self-defense' exists where the defendant actually, but unreasonably, believed that deadly force was necessary. However, all other principles of self-defense must still be met in order to establish this defense." *Truong*, 36 A.3d at 599 (citations omitted); *see also* 18 Pa.C.S.A. § 2503(b). "A successful claim of imperfect self-defense reduces murder to voluntary manslaughter." *Truong*, 36 A.3d at 599.

Appellant asserts that "the Commonwealth did not disprove imperfect self-defense and the evidence was insufficient to prove [Appellant] killed [Mr.] Otero willfully and deliberately." Appellant's Brief at 25. Appellant asserts

- 10 -

that his actions, at most, constituted voluntary manslaughter, because he harbored a "genuine but mistaken belief that deadly force was justified." *Id.* Appellant contends that "[a]lthough the Commonwealth may have established that [Appellant's] belief that deadly force was necessary was unreasonable[, the Commonwealth] did not disprove that [Appellant] genuinely believed that he was in imminent danger that required deadly force and [did] not disprove either of the other elements of self-defense[.]" *Id.* at 26-27. Appellant contends that "[w]hen [Appellant] shot [Mr.] Otero in the head, [] it was his genuine - but mistaken - belief that under the circumstances, in order to protect himself, family[,] and friends, he had to use such deadly force in order to eliminate what was[,] in his mind[,] an ongoing and deadly threat." *Id.* at 28-29. Appellant maintains that Mr. Otero and Mr. Mota-Montilla, as well as other members of their group, started "the firearms infused violence" and that Appellant and his friends were unable to retreat to safety but, rather, were "reduced to ducking behind a car at one point" in order to avoid being shot. *Id.* at 30. Appellant contends, however, that, although the Commonwealth successfully established that his action of shooting Mr. Otero in the skull while he laid on the ground unconscious was "unreasonable and was not in the spirit of self-defense," the Commonwealth failed to present sufficient evidence to disprove that Appellant did not have a genuine belief that such force was justified under the circumstances. *Id.* at 29.

In viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, we concur with the trial court, and the

- 11 -

record supports, that the Commonwealth presented sufficient evidence that Appellant killed Mr. Otero with malice and the specific intent to kill necessary to support his conviction of first-degree murder. Dr. Michelle Nagurney, an associate medical examiner for the Philadelphia medical examiner's office who was admitted as an expert in forensic pathology, testified that Mr. Otero was shot in the back of the head by a gun that was held within an inch of the victim's skull. N.T., 1/30/24, at 45, 47, 60, 66-70. Jeffrey Tabarez, an acquaintance of Appellant, explained that, upon exiting the after-hours club and prior to the fight ensuing, Appellant took possession of Mr. Tabarez's 9mm handgun. *Id.* at 134-135. Mr. Tabarez stated that, during an encounter with Mr. Otero, he punched and kicked Mr. Otero and "knocked the guy out." *Id.* at 143, 148. While Mr. Otero lay unconscious on the ground, Appellant shot Mr. Otero in the back of the skull while holding the handgun within an inch of a vital organ in Mr. Otero's body, namely his brain. Commonwealth Exhibit C-87.[6] This evidence was sufficient to support the jury's conclusion that Appellant shot Mr. Otero with malice and the specific intent to kill him.

In viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, we concur with the trial court, and the record supports, that the jury, as fact-finder, could conclude that Appellant did not believe Mr. Otero presented an imminent danger of death or great

_____

[6] At trial, the Commonwealth identified the video footage of the incident as Exhibit C-87. N.T., 1/30/24, at 89. The video footage exhibited, as contained in the certified record, is identified as Exhibit C-86.

- 12 -

bodily injury to Appellant that necessitated Appellant's act of shooting Mr. Otero at close range in the back of his skull. As Mr. Tabarez testified, he struck Mr. Otero with his fist and knocked him unconscious. N.T., 1/30/24, at 143, 148; *see also* Commonwealth Exhibit C-87. As Mr. Otero lay unconscious on the ground, he presented no imminent danger of death or great bodily injury to Appellant or any of Appellant's friends. This evidence was sufficient to permit a jury to conclude that Appellant did not genuinely believe that he, or others, were threatened with death or great bodily injury at the time he fatally shot the victim. To the contrary, the video surveillance footage depicts Mr. Tabarez striking Mr. Otero in the head and another individual "throwing" Mr. Otero to the ground where he lay still. Commonwealth Exhibit C-87. Mr. Tabarez is then observed kicking Mr. Otero in the head. *Id.* As Mr. Otero lay motionless on the ground, Appellant ran past Mr. Otero, shot Mr. Otero in the back of the head at close range, and ran further down the street. *Id.* The evidence is sufficient to both prove intent to kill and to disprove Appellant's assertion of self-defense and imperfect self-defense.

Turning to Case CR-2991, Appellant argues – largely on the grounds offered as support for his claims of self-defense – that the Commonwealth failed to prove that he possessed a firearm with criminal intent or an unlawful purpose and, for those reasons, the evidence was insufficient to support his convictions for PIC and VUFA. Section 907(a) of the Crimes Code states that "[a] person commits a misdemeanor of the first degree if he [or she]

possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S.A. § 907(a). Thus, to convict a person of PIC, "the Commonwealth must establish the defendant possessed "any instrument of crime with intent to employ it criminally." *Commonwealth v. Dix*, 207 A.3d 383, 391 (Pa. Super. 2019), *appeal denied*, 217 A.3d 790 (Pa. 2019). For purpose of PIC, an "instrument of crime" is defined as "[a]nything specially made or specially adapted for criminal use" or "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S.A. § 907(d). "Intent can generally be inferred from the surrounding circumstances. [However, i]ntent to employ a weapon criminally cannot be inferred from mere possession of the weapon." *Dix*, 207 A.3d at 391 (citations, original brackets, and original quotation marks omitted).

Appellant concedes that a firearm, such as a 9mm handgun, is an instrument of crime when possessed by an actor under circumstances not manifestly appropriate for its intended lawful use. *See* Appellant's Brief at 31 (stating, Appellant "agrees that a firearm is statutorily an instrument of crime"); *see also Commonwealth v. Monroe*, 422 A.2d 193, 195 (Pa. Super. 1980). Appellant also concedes that he possessed the 9mm handgun after he took possession of it from Mr. Tabarez. Appellant's Brief at 32-33 (stating, "Appellant concedes actual possession" of the handgun when he took the firearm from Mr. Tabarez). Appellant contends, however, that the Commonwealth failed to present sufficient evidence that he possessed the

firearm with the intent to employ it criminally. *Id.* at 33. Instead, Appellant maintains that "the entire time [he] held the firearm, he was simply trying to ward off what he perceived to be armed, violent[,] and overall un-ceasing aggressor decedents[.]" *Id.* at 34. In other words, Appellant proffers that, because he used the 9mm handgun in self-defense, he did not have the requisite intent to use the firearm in a criminal manner. *Id.* at 33-34.

As discussed *supra*, the Commonwealth presented sufficient evidence to disprove Appellant's claims of self-defense and imperfect self-defense. For related reasons, therefore, Appellant's claim that the evidence was insufficient to support his PIC conviction because he possessed the firearm for purposes of self-defense fails. Instead, in viewing the evidence in the light most favorable to the Commonwealth, there was sufficient evidence to support Appellant's PIC conviction. The video surveillance footage evidence establishes that Appellant possessed the 9mm handgun with the intent to employ it criminally when Appellant aimed the firearm at Mr. Mota-Montilla's head, a vital body part, and shot him in the face, causing him to fall to the ground incapacitated. Commonwealth Exhibit C-87. After several individuals are observed punching and kicking Mr. Mota-Montilla while he is on the ground, Appellant is then observed shooting Mr. Mota-Montilla in the chest and killing Mr. Mota-Montilla before Appellant proceeds to shoot Mr. Otero in the back of the skull while he lay unconscious on the ground and killing Mr. Otero. *Id.*

Finally, Section 6108 of the Crimes Code stated that "[n]o person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless[] such person is licensed to carry a firearm[, or] such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license)."[7] 18 Pa.C.S.A. § 6108. "Philadelphia is the only city of the first class in Pennsylvania[.]" **Sumpter**, 340 A.3d at 980. Because Section 6108 does not state a requisite intent, the culpability, or *mens rea*, necessary to convict a person of Section 6108 is set forth in Section 302(c) of the Crimes Code.

_____

[7] On June 23, 2025, this Court held that Section 6108 was "unconstitutional on an equal protection basis" because, under Section 6108, "persons within the City of Philadelphia [were placed] at a special disadvantage in the exercise of their Second Amendment right." **Commonwealth v. Sumpter**, 340 A.3d 977, 988 (Pa. Super. 2025) (stating that, a person 18 years of age or older was permitted to openly carry a firearm without a license elsewhere in the Commonwealth but the same person was required, under Section 6108, to first obtain a license to openly carry a firearm in the City of Philadelphia). In finding Section 6108 unconstitutional, the **Sumpter** Court announced a new rule of law that applies retroactively to cases pending on direct appeal so long as the issue was preserved at all stages of adjudication. **Commonwealth v. Hays**, 218 A.3d 1260, 1266 (Pa. 2019) (stating, "where "an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal" (citation and original quotation marks omitted)); **see also Commonwealth v. Newman**, 99 A.3d 86, 90 (Pa. Super. 2014) (*en banc*), *appeal denied*, 121 A.3d 496 (Pa. 2015); **Commonwealth v. Sneed**, 899 A.2d 1067, 1076 (Pa. 2006).

Here, Appellant did not challenge the constitutionality of Section 6108 in the trial court or on direct appeal. Therefore, the new rule of law announced in **Sumpter** does not apply retroactively to Appellant's appeal.

Section 302(c) states that "[w]hen the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly[,] or recklessly with respect thereto." 18 Pa.C.S.A. § 302(c). Thus, in order to establish guilt under Section 6108, the Commonwealth must establish that the person intentionally, knowingly, or recklessly possessed a firearm, rifle, or shotgun upon a public street or public property within the City of Philadelphia.

Section 302(b) defines the pertinent kinds of culpability as follows:

**(b) Kinds of culpability defined.--**

(1) A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

(3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and

- 17 -

intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b).

Appellant concedes that "[t]he evidence was clearly sufficient to establish that [Appellant did not have a] carry permit[,] that he had the firearm out in the public in Philadelphia, which is a city of the [f]irst [c]lass[, and] that it was operable." Appellant's Brief at 36. Appellant asserts that the Commonwealth failed to establish that "he possessed the firearm with any **knowing** criminal manner." *Id.* (emphasis in original). Appellant contends that he "did purposefully possess the firearm when he took it from [Mr.] Tabarez's waistband, but he did so under the genuine – although mistake[ or ]unreasonable – belief that he had no choice but to use deadly force." *Id.* at 37. Appellant maintains that he possessed the firearm for purpose of self-defense. *Id.* at 35.

Appellant is mistaken in his assertion that, to establish guilt under Section 6108, the Commonwealth was required to show that he possessed the firearm on the public streets or public property of Philadelphia with the intent to commit a criminal act. Instead, the pertinent criminal act is the intentional, knowing, or reckless possession of a firearm on the public streets of Philadelphia by a person who is not licensed (or who does not qualify as an exempt individual). Here, Appellant admits, and the evidence supports, that he removed the firearm from Mr. Tabarez's waistband and that possessed the

firearm while on the public streets of Philadelphia without a license to do so. Appellant's Brief at 36-37; *see also* N.T., 1/30/24, at 134-135, 139; Commonwealth Exhibit C-87. These were intentional and knowing acts. Therefore, in viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, there was sufficient evidence to prove Appellant's guilt under Section 6108.

In his final issue, Appellant asserts that the trial court abused its discretion when it ruled that it would permit the Commonwealth to introduce evidence of Appellant's prior conviction of Section 6106 of the Crimes Code (firearms not to be carried without a license) if Appellant presented character evidence to show his reputation in the community for non-violence and peacefulness. Appellant's Brief at 39-43.

> Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the [trial] court's decision on such a question absent a clear abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Crosley*, 180 A.3d 761, 768 (Pa. Super. 2018) (citations and quotation marks omitted), *appeal denied*, 195 A.3d 166 (Pa. 2018).

> A defendant in a criminal case may offer evidence of a "pertinent" character trait. Our Supreme Court has defined "pertinent" to mean "relevant to the crime charged." It is well-settled that evidence of a defendant's good character must be limited to [his or] her general reputation for the particular trait or traits of character involved in the commission of the crime charged. Such evidence must be established by testimony of witnesses as to the

community opinion of the defendant, not through specific acts. In addition, character is "a generalized propensity to act in a certain way without reference to specific conduct, and frequently contains a normative, or value-laden, component," such as a character for truthfulness. Character evidence is inadmissible to prove that a defendant acted in accordance with that trait on a particular occasion.

*Commonwealth v. Lopez*, 321 A.3d 1085, 1088 (Pa. Super. 2024) (citations, some quotation marks, ellipsis, and original brackets omitted), *appeal denied*, 333 A.3d 1043 (Pa. 2025); *see also Commonwealth v. Medina*, 209 A.3d 992, 997 (Pa. Super. 2019) (stating, Pennsylvania Rule of Evidence 404(a)(2)(A) "allows the defendant to 'put his character in issue,' usually by calling character witnesses to testify to his good reputation for a law-abiding disposition, or other pertinent trait of character" (*citing* Pa.R.E.404 *Comment*)).

> Of course, the Commonwealth may attempt to impeach those [character] witnesses. For example, when cross-examining character witnesses offered by the accused, the Commonwealth may test the witnesses' knowledge about specific instances of conduct of the accused where those instances are probative of the traits in question. However, the Commonwealth's right to cross-examine character witnesses is not unlimited[. T]he Commonwealth may not cross-examine a character witness about a defendant's uncharged criminal allegations[] or a defendant's arrests that did not lead to convictions.

*Commonwealth v. Kuder*, 62 A.3d 1038, 1057-1058 (Pa. Super. 2013) (citations and quotation marks omitted), *appeal denied*, 114 A.3d 416 (Pa. 2015); *see also Commonwealth v. Hoover*, 16 A.3d 1148, 1149-1150 (Pa. Super. 2011); *Commonwealth v. Morgan*, 739 A.2d 1033, 1035-1036 (Pa. 1999); Pa.R.E. 405(a).

Appellant argues that his prior conviction of Section 6106, a firearm possessory crime, was not a crime of violence and, therefore, the trial court abused its discretion in ruling that the Commonwealth would be permitted to impeach his character evidence of peacefulness and non-violent behavior by introducing evidence of his Section 6106 conviction. Appellant's Brief at 41. Appellant asserts that the trial court's ruling caused him to forego his trial strategy of introducing good character evidence which, if introduced, would have required the trial court to provide a jury instruction that evidence of good character may, in and of itself, create a reasonable doubt of guilt. *Id.* at 40. Appellant contends that, if such a jury instruction had been provided, his character evidence of peacefulness and non-violent behavior "would have directly refuted the malice required to prove [first-degree murder]." *Id.* at 42.

The trial court explained its decision regarding Appellant's character evidence as follows:

> Appellant's prior conviction was a standard example of rebuttal evidence permitted under the law. The case law clearly states that if he were to introduce evidence of his reputation for peacefulness, the Commonwealth would be permitted to use the prior conviction [of Section 6106] on cross-examination to test the accuracy of the character witness's testimony and the standard by which [the character witness] measures reputation.
>
> A review of the record reflects that [the trial c]ourt permitted Appellant's prior conviction for precisely this purpose. At Appellant's trial[, the trial c]ourt ruled that the Commonwealth could challenge the knowledge of Appellant's character witness regarding Appellant's reputation for non-violence and peacefulness using Appellant's [Section 6106] conviction. After rendering its decision, [the trial c]ourt took the time to confirm

- 21 -

whether Appellant understood the ruling and agreed with his counsel's decision not to call any character witnesses. Ultimately, Appellant concurred with his counsel's decision not to introduce any character evidence.

Trial Court Opinion, 1/16/25, at 18.

If Appellant were to present character evidence of peacefulness and non-violent behavior through a character witness, the Commonwealth would be permitted to cross-examine the witness about prior convictions probative of the character traits in question (peacefulness and non-violent behavior). The trial court, however, failed to consider whether, or not, Appellant's prior conviction of Section 6106 was probative of a reputation of peacefulness and non-violent behavior. *See id.* In other words, to determine whether the Commonwealth should have been permitted to confront Appellant's character witness with evidence of Appellant's prior criminal conviction under Section 6106, the trial court needed to ascertain whether, or not, Section 6106 could be considered a crime of violence and whether, or not, a prior conviction under that provision could negate Appellant's alleged reputation of peacefulness and non-violence. *Kuder*, 62 A.3d at 1057-1058; *see also Hoover*, 16 A.3d at 1149-1150; Pa.R.E. 405(a).

Section 6106 defines the offense of firearms not to be carried without a license as follows:

**§ 6106. Firearms not to be carried without a license**

**(a) Offense defined.**--

(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a

firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

(2) A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree.

18 Pa.C.S.A. § 6106(a)(1) and (2). Appellant was previously convicted of violating Section 6106(a)(1) because, as identified by Appellant, his prior conviction of Section 6106 was graded as a felony of the third degree. Appellant's Brief at 41 (stating that, in 2016, Appellant was convicted of violating Section 6106, a felony of the third degree, which implies that Appellant violated Section 6106(a)(1)).

In order to prove a violation of either Section 6106(a)(1) or (a)(2), the Commonwealth would have had to establish that Appellant concealed a firearm in his vehicle or on his person, while not in his place of abode of a fixed place of business, without a valid license. *See generally*, 18 Pa.C.S.A. § 6106(a); *see also Commonwealth v. Muhammad*, 335 A.3d 1047, 1053 (Pa. 2025) (stating that, to convict a person of Section 6106(a), the Commonwealth must prove that the defendant intentionally, knowingly, or recklessly (1) carried the firearm in a vehicle or concealed it on his or her person, (2) was not in his or her home or fixed place of business, and (3) did not have a valid and lawfully issued license to carry the firearm). The

distinguishing factor between a conviction of Section 6106(a)(1) and (a)(2) is the grading of the offense. ***Commonwealth v. Bavusa***, 832 A.2d 1042, 1052 (Pa. 2003) (stating that, Section 6106(a)(2) does not require additional elements to secure a conviction under Section 6106(a) but, rather, provides for a lesser gradation of an unlicensed firearm offense where the accused has no history of a disqualifying conviction and remains eligible for a license). If a defendant violates Section 6106(a)(1) but was eligible to obtain a license and failed to do so before possessing a concealed firearm, then the defendant violates Section 6106(a)(2) and his offense would be graded as a misdemeanor of the first degree. ***Compare*** 18 Pa.C.S.A §§ 6106(a)(1) ***with*** 18 Pa.C.S.A. § 6106(a)(2); ***see also Bavusa***, 832 A.2d at 1052. Because Appellant was convicted of violating Section 6106(a)(1) and not (a)(2), Appellant either committed another criminal violation, thus negating the character traits of peacefulness and non-violent behavior, or he was not eligible to obtain a license to carry a firearm. Among the enumerated reasons a person is not eligible to obtain a license to carry a firearm is the fact that the individual's "character and reputation is such that the individual would be likely to act in a manner dangerous to public safety." 18 Pa.C.S.A. § 6109(e)(1)(i). Thus, ineligibility to obtain a license to carry a firearm also negates the character traits of peacefulness and non-violent behavior. As such, if Appellant called a character witness for purpose of presenting his alleged reputation of peacefulness and non-violent behavior, the Commonwealth would have been permitted to cross-examine Appellant's

character witness regarding the witness's knowledge of Appellant's prior violation of Section 6106(a)(1). Therefore, we discern no error of law or abuse of discretion in the trial court's preliminary ruling regarding the admissibility of Appellant's prior conviction of Section 6106(a)(1) for purpose of negating character evidence of peacefulness and non-violent behavior.

Judgments of sentence affirmed. Petition to withdraw as counsel granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/2/2025